UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

DANIELLE MARIE SUNDOWN,

        Plaintiff,

  -vs-

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

        Defendant.

**DECISION and ORDER**
**No. 1:15-cv-00814(MAT)**

---

## INTRODUCTION

Danielle Marie Sundown ("Plaintiff"), represented by counsel, brings this action pursuant to Title XVI of the Social Security Act ("the Act"), seeking review of the final decision of the Acting Commissioner of Social Security ("Defendant" or "the Commissioner"),[1] denying her applications for Supplemental Security Income ("SSI"). The Court has jurisdiction over the matter pursuant to 42 U.S.C. §§ 405(g), 1383(c).

## PROCEDURAL STATUS

On July 3, 2012, Plaintiff filed an application for SSI, alleging disability as of June 25, 2012, due to a torn left meniscus, pain in the left knee and back, depression and anxiety. Her application was denied, and a hearing subsequently was held

---

[1] Nancy A. Berryhill became the Acting Commissioner of Social Security on January 20, 2017. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted, therefore, for Acting Commissioner Carolyn W. Colvin as Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

before Administrative Law Judge Michael W. Devlin ("the ALJ") on December 17, 2013. Plaintiff appeared with her attorney and testified, as Julie A Andrews, an impartial vocational expert ("the VE"). On March 28, 2014, the ALJ issued an unfavorable decision. (T.8-22).[2] That decision became the Commissioner's final decision on July 13, 2015, when the Appeals Council denied Plaintiff's request for review. Plaintiff then timely commenced this action.

## THE ALJ'S DECISION

At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity ("SGA") since the application date. Although Plaintiff was employed for brief periods following the application date, it did not rise to the level of SGA.

At step two, the ALJ determined that Plaintiff had the following "severe" impairments: status-post arthroscopic repair of medial and lateral meniscus tears and anterior cruciate ligament tear of the left knee; obesity; adjustment disorder with mixed anxiety and depressed mood; post-traumatic stress disorder ("PTSD"); panic disorder without agoraphobia; attention deficit hyperactivity disorder ("ADHD"); alcohol abuse; and cannabis dependence. (T.13).

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically

---

[2] Citations in parentheses to "T." refer to pages from the certified transcript of the administrative record.

equals an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ specifically considered Listings 1.02, 12.04, 12.06, and 12.09. (T.14-15). In activities of daily living, Plaintiff was found to have moderate restriction based on the fact that she receives assistance with money management and daily tasks because she becomes overwhelmed easily. However, the ALJ noted, Plaintiff is able to drive, manage her own personal care tasks, shop for food for her children, and prepare simple meals. In social functioning, the ALJ assigned mild difficulties. The ALJ noted that although Plaintiff stated she tried to avoid associating with others, she has never lost a job due to conflicts with supervisors or coworkers, and the consultative psychologist described her manner of relating as fair. With regard to concentration, persistence or pace, the ALJ found that Plaintiff has moderate difficulties based on her self-reports of difficulty paying attention, finishing the tasks she starts, and following written instructions. However, the ALJ noted, Plaintiff is able to follow spoken instructions, watch television, and care for her three young children. As far as episodes of decompensation, the ALJ found no evidence of such incidents in the record.

The ALJ then assessed Plaintiff as having the residual functional capacity ("RFC") to perform the exertional requirements of light work as defined in 20 C.F.R. § 416.967(b), including standing or walking about 6 hours in an 8-hour day and sitting about 6 hours in an 8-hour day. However, the ALJ found that

Plaintiff was limited to occasionally pushing or pulling 20 pounds; occasionally climbing ramps or stairs, balancing, stooping, kneeling, crouching, and crawling; and rarely climbing ladders, ropes or scaffolds. In connection with the limitations caused by her mental impairments, the ALJ determined that Plaintiff could understand, remember, and carry out simple instructions and tasks; can occasionally interact with coworkers and supervisors; should have little or no contact with the general public; is able to work in a low stress environment (meaning no supervisory duties, no independent decision-making required, no strict production quotas, and minimal changes in work routine and process), and is able to consistently maintain concentration and focus for up to 2 hours at a time. (T.15).

At step four, the ALJ concluded that Plaintiff did not have any past relevant work ("PRW"). Since leaving high school after completing 8th grade, Plaintiff has worked as a bus attendant, cashier, cook, housekeeper, and laborer. (T.162). Although she posted positive earnings in every year from 1999. through 2012 (the year she alleges she became disabled), those earnings have never been above the SGA threshold, and therefore she does not have any PRW.

At step five, the ALJ found that Plaintiff was 29 years-old on the application date with a limited education (she had completed 8th grade). The ALJ relied on the VE's testimony that a person of Plaintiff's age, and with her education, work experience, and RFC,

-4-

could perform the requirements of the following representative jobs that exist in significant numbers in the national economy: housekeeper cleaner (Dictionary of Occupational Titles ("DOT") Code 323.687-014, unskilled, SVP 2, light exertional level); and small product assembler I (DOT Code 706.684-022, unskilled, SVP 2, light exertional level). There are, respectively, 1.1 million and 368,669 of these jobs nationally.

At step five, the ALJ found that Plaintiff has not been under a disability, as defined in the Act, since the application date.

## SCOPE OF REVIEW

A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by "substantial evidence" or if the decision is based on legal error. 42 U.S.C. § 405(g); see also Green-Younger v. Barnhart, 335 F.3d 99, 105-06 (2d Cir. 2003). The district court must accept the Commissioner's findings of fact, provided that such findings are supported by "substantial evidence" in the record. See 42 U.S.C. § 405(g) (the Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive"). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000) (quotation omitted). The reviewing court nevertheless must scrutinize the whole record and examine evidence that supports or detracts from both sides. Tejada v. Apfel, 167 F.3d 770, 774

(2d Cir. 1998) (citation omitted). "The deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." Byam v. Barnhart, 336 F.3d 172, 179 (2d Cir. 2003) (citing Townley v. Heckler, 748 F.2d 109, 112 (2d Cir. 1984)).

**DISCUSSION**

**I. Mental RFC Based on Legally Erroneous Weighting of Various Medical Opinions and Unsupported by Substantial Evidence (Plaintiff's Point I)**

Plaintiff argues that remand is required because the ALJ's mental RFC assessment was not based on substantial evidence. Specifically, Plaintiff asserts, the ALJ's reliance on a conclusory non-examining medical opinion, made without the benefit of any of her treatment notes, could not amount to substantial evidence where that opinion was in conflict with the records of Plaintiff's treating therapists and the consultative psychological examiner. The Commissioner responds that the ALJ properly applied the legal standards and appropriately exercised his discretion in resolving the evidentiary conflicts in the record to assess Plaintiff's mental RFC, which is supported by substantial evidence.

On October 4, 2012, Plaintiff reported to consultative psychologist Yu-Ying Lin, Ph.D., for an evaluation at the Commissioner's request. (T.286-89). Dr. Lin noted that Plaintiff's current functioning was remarkable for difficulty sleeping,

increased appetite, dysphoric mood, psychomotor retardation, crying spells, loss of usual interest, irritability, fatigue, social withdrawal, excessive worry, irritability, restlessness, difficulty concentrating, nightmares, flashbacks, intrusive thoughts, hyperstartle response, hypervigilance, and panic symptoms (3 to 4 times per week since April of 2012). (T.286-87). Mental status examination revealed dysphoric affect and dysthymic mood. Dr. Lin opined t hat her attention and concentration ppeared to be impaired due to limited intellectual functioning and anxiety in the evaluation; she was able to perform simple addition and subtraction but was unable to perform multiplication. She answered 17, 14, 10, 9, 6, to serial 3s. As far as her recent and remote memory skills, Plaintiff recalled 3 objections immediately and 1 object after a delay, and she recited 6 digits forwards and 2 digits backwards. Dr. Lin opined that her memory skills appeared to be impaired due to anxiety in the evaluation and limited intellectual functioning, which he noted was in the below average range. Plaintiff displayed good insight and fair judgment. (T.287-88). Plaintiff reported that she was able to dress, bathe and groom herself, and was able to cook, clean, shop, and do laundry. Her sister and her friend helped her with money management because she was easily overwhelmed. She did not take public transportation due to her rural location. Dr. Lin offered the following medical source statement:

> [Plaintiff] can follow and understand simple directions and instructions. She can perform simple tasks independently. She cannot maintain attention and concentration. She may have difficulty maintaining a

regular schedule. She can learn new tasks. She can perform complex tasks with supervision. She may have difficulty making appropriate decisions at times. She can relate adequately with others. She cannot appropriately deal with stress. Her difficulties are caused by stress-related problems. The results of this examination appear to be consistent with psychiatric problems, and this may significantly interfere with [Plaintiff]'s ability to function on a daily basis.

(T.288). Dr. Lin diagnosed Plaintiff with adjustment disorder with mixed anxiety and depressed mood, and indicated that she would need assistance managing funds. (T.288-89).

The ALJ found that Dr. Lin's opinion should be "given little weight because the findings are internally inconsistent. Specifically, adjustment disorders are transitory in nature and do not warrant such severe limitations on an ongoing basis." (T). According to the ALJ, the opinion of Dr. Lin "cannot be given more weight" for that reason.

Although the ALJ is "free to resolve issues of credibility as to lay testimony or two choose between properly submitted medical opinions," he "cannot arbitrarily substitute his own judgment for competent medical opinion." Balsamo v. Chater, 142 F.3d 75, 81 (2d Cir. 1998). That, however, is what the ALJ did here by opining, without any record or other support, on a matter requiring medical expertise—namely, how to characterize "adjustment disorders" and whether or not they can cause the types of severe limitations assigned by Dr. Lin. See Balsamo, 142 F.3d at 81 (finding that the ALJ improperly made a medical determination by concluding that an absence of "atrophy of any muscle groups" was inconsistent with a

finding of disability); see also Rosa v. Callahan, 168 F.3d 72, 79 (2d Cir. 1999) ("[A]s a 'lay person[ ],' the ALJ simply was not in a position to know whether the absence of muscle spasms would in fact preclude the disabling loss of motion described by Dr. Ergas in his assessment.") (citing Wagner v. Sec'y of Health and Human Servs., 906 F.2d 856, 861 (2d Cir. 1990); footnote omitted; brackets in original). Not only was the ALJ's rationale for discounting Dr. Lin's opinion the result of misplaced attempt to "play doctor," it is purely speculative. In short, the Court finds that the ALJ improperly substituted his own layperson's judgment for a competent medical opinion from Dr. Lin, an acceptable medical source who is a specialist in the field in which he is offering an opinion.

Furthermore, the Court finds that the ALJ's assignment of "significant weight" to the opinion of non-examining State agency review consultant, J. Echevarria, Ph.D., is legally erroneous and unsupported by substantial evidence. District courts in this Circuit have stated, as a general proposition, that "while reports from nonexamining consultants are entitled to some evidentiary weight, they cannot constitute substantial evidence." Petersen v. Astrue, 2 F. Supp.3d 223, 236 (N.D.N.Y. 2012) (citing Griffith v. Astrue, 08-CV-6004, 2009 WL 909630, at *9 (W.D.N.Y. July 27, 2009); McClean v. Astrue, 04-CV-1425, 2009 WL 1918397, at *4 n. 2 (E.D.N.Y. June 30, 2009)). Here, Dr. Echevarria did not examine Plaintiff, and only reviewed Plaintiff's records. Moreover, it is

apparent that Dr. Echevarria did not review the entire record, since he stated that Plaintiff was not currently in treatment, and that the last time she had received outpatient treatment was in 2011. (T.369). Thus, as Plaintiff argues, he did not have any of the outpatient records from late 2012 available for his review. (See T.228-30, 255-58, 276-82, 283-85)).

Moreover, Dr. Echevarria's RFC assessment simply parrots Dr. Lin's report. (Compare T.370 with T.286-89). Inexplicably, however, after citing Dr. Lin's restrictive medical source assessment, Dr. Echevarrai concluded that Plaintiff "remains capable of performing simple repetitive work in a low stress environment." (T.370 (capital letters omitted)). See, e.g., D'augustino v. Colvin, No. 15-CV-6083, 2016 WL 5081321, at *2 (W.D.N.Y. Sept. 16, 2016) (finding error where, "[d]espite adopting virtually all of [the consultative psychologist]'s assessment of [the claimant]'s cognitive capabilities, [the State agency review consultant] inexplicably decided that [the claimant] was capable of full-time competitive employment so long as he had 'little contact with others'"). Given that Dr. Echevarria adopted Dr, Lin's findings, "it was incumbent on the ALJ to adequately discuss his reasoning for adopting one opinion over the other, particularly the non-examining, opinion over the examining one." Id. Here, without identifying any particular items of evidence, the ALJ summarily concluded that Dr. Echevarria's report was "consistent with the objective evidence of record outlined above" in the decision.

-10-

(T.19). This statement is inadequate to permit meaningful appellate review as to whether the ALJ's decision to discount consultative psychologist's opinion in favor of the non-examining review psychologist's opinion is supported by substantial evidence. See, e.g., Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984) ("[T]he crucial factors in any determination must be set forth with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence.") (citation omitted).

The ALJ's weighing of the two medical opinions from "acceptable medical sources" regarding Plaintiff's limitations due to her mental impairments are legally erroneous and not supported by substantial evidence. Remand accordingly is required. See D'augustino, 2016 WL 5081321, at *2. (finding that granting of "significant weight" to the assessment by State agency psychiatric consultant, who reviewed an incomplete record, was erroneous; remand was warranted) (citing Pratts v. Chater, 94 F.3d 34, 38 (2d Cir. 1996) (finding that a non-examining expert medical opinion based on an incomplete record cannot constitute substantial evidence on which to find claimant not disabled)).

Plaintiff also assigns error in regard to the ALJ's weighing of the mental RFC assessment (T.373-78) co-authored by her two of her mental health care providers, Christine Peterson, Certified Alcohol and Substance Abuse Counselor ("Counselor Peterson"), and Nurse Practitioner Jerry Turk ("NP Turk"). Counselor Peterson and

-11-

NP Turk opined that Plaintiff had mainly "unlimited" or "limited but satisfactory" ability in most of the aptitudes and skills necessary for employment, but was "seriously limited" (defined on the form as "frequently be less than satisfactory in any work setting") in several areas. Counselor Peterson and NP Turk also estimated that Plaintiff would be absent from work more than four days a month. The ALJ explained that he could not give this opinion more than "some weight" because there was "little indication whether the expectation that the claimant would miss four days of work per month is due to psychiatric reasons, substance abuse, or lack of daycare." (T.19). Plaintiff argues that the ALJ misread the record. As Plaintiff points out, NP Turk and Ms. Peterson were specifically asked on the form "how often do you anticipate that your patient's *impairments or treatment* would cause your patient to be absent from work." (T.377) (emphasis added). Elsewhere on the form, Counselor Peterson and NP Turk specifically indicated that substance abuse or alcohol abuse did not contribute to any of the limitations that were identified throughout their opinion. (Id.). On remand, the ALJ should reweigh the mental RFC assessment offered by Counselor Peterson and NP Turk in accordance with the applicable regulations and SSR 06-3p, 2006 WL 2329939 (S.S.A. Aug. 9, 2006).

**II. Physical RFC Unsupported by Substantial Evidence Where ALJ Failed to Obtain Clarification From Consultative Physician Regarding Limitations Assigned (Plaintiff's Point II)**

Plaintiff argues that the ALJ's physical RFC assessment is inconsistent with the opinion of consultative physician Dr. Karl

Eurenius, which the ALJ accorded "significant weight." The Commissioner contends that Dr. Eurenius's medical source statement is consistent with the ALJ's RFC assessment limiting Plaintiff to a range of light work.

At the consultative examination on October 4, 2012, Dr. Eurenius observed that Plaintiff's gait showed a mild limp favoring the left leg, and that she cannot stand on toes or heels due to pain in the left knee and can squat only 1/4-full due to pain in the left knee. Otherwise, her stance was normal, and she used no assistive device and needed no help changing, getting on and off the exam table, or rising from a chair. Reviewing her musculoskeletal system, Dr. Eurenius noted that she had full range of motion ("ROM") in her hips, knees, and ankles bilaterally. However, the left knee was slightly warm with a definite subpatellar effusion. Dr. Eurenius observed that the "knee joint feels tight with full ROM." For his medical source statement, Dr. Eurenius indicated that she was "moderately limited in walking, prolonged standing, and climbing due to left knee pain secondary arthroscopic surgery." (T.292).

Under the circumstances of this case, the Court finds that Dr. Eurenius's opinion, which the ALJ accorded "significant weight," is not facially consistent with an RFC assessment for light work with certain non-exertional limitations. See, e.g., Moe v. Colvin, No. 1:15-CV-00347(MAT), 2017 WL 6379239, at *6 (W.D.N.Y. Dec. 14, 2017) (consultative physician's opinion assigning

"'moderate' limitations with respect to 'prolonged walking or [sic] climbing'," "which the ALJ accorded 'significant' weight, is not consistent, on its face, with the ALJ's RFC assessment that [the claimant] can perform light work with certain non-exertional limitations") (citing Carroll v. Colvin, No. 13-CV-456S, 2014 WL 2945797, at *4 (W.D.N.Y. June 30, 2014) ("[The consultative physician]'s report is not the clean bill of health that the ALJ suggests it is. Indeed, even [the consultative physician], whose opinion received greater weight, found that Carroll suffered from moderate limitations in prolonged sitting and standing. This not necessarily compatible with an ability to perform light work."); Malone v. Comm'r of Soc. Sec., No. 08-CV-1249(GLS/VEB), 2011 WL 817448, at *10 (N.D.N.Y. Jan. 18, 2011) ("A job in 'the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday.' SSR 83-10. The only direct evidence in the record of [the claimant]'s abilities in this regard is Dr. Wahl's non-specific indication of 'moderate' limitation. At a minimum, an assessment of moderate limitation suggests a possibility that prolonged standing might pose a problem.")). The Court agrees that the ALJ's failure to reconcile his RFC assessment with the moderate impairments assessed by Dr. Eurenius requires remand. See id.

## CONCLUSION

For the foregoing reasons, the Court finds that the Commissioner's decision contains legal errors and is unsupported by

substantial evidence. Accordingly, the Commissioner's decision is reversed. Plaintiff's Motion for Judgment on the Pleadings is granted to the extent that the matter is remanded for further administrative proceedings consistent with this Decision and Order. Defendant's Motion for Judgment on the Pleadings is denied. In light of the fact that Plaintiff's application was first filed in 2012 (nearly six years ago), on remand, the Commissioner is instructed to consider her claim on an expedited basis, to be completed no later than October 31, 2018. The Clerk of Court is directed to close this case.

**SO ORDERED.**

**S/Michael A. Telesca**

HON. MICHAEL A. TELESCA
United States District Judge

Dated: February 28, 2018
Rochester, New York.